******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# MARIO CAMPELLI ET AL. *v.* TOWN
# OF MANSFIELD
# (SC 21209)

Mullins, C. J., and McDonald, D'Auria, Ecker,
Alexander, Dannehy and Bright, Js.

*Syllabus*

Pursuant to statute (§ 12-107b (2)), "forest land" is defined in relevant part as a tract or tracts of land in a municipality or municipalities "aggregating twenty-five acres or more in area bearing tree growth that conforms to . . . [certain] standards established by the State Forester . . . ."

Pursuant further to statute (§ 12-107d (f)), a property owner who has obtained a report from a certified forester certifying that the property owner's land conforms to the standards established by the state forester may file an application with the assessor of the town in which the land is located, along with the certified forester's report, to have the assessor classify the land as forest land and thereby receive a reduction in the property tax assessment, and, if the assessor determines that the use of the land as forest land has not changed as of or prior to the assessment date, the assessor shall classify the land as forest land.

Pursuant further to statute (§ 12-504h), land that has been classified as forest land "shall remain so classified without the filing of any new application subsequent to such classification . . . until either . . . [t]he use of such land is changed to a use other than that described in the application for the existing classification . . . or . . . such land is sold or transferred . . . ."

The plaintiffs, who owned property located in the town of Mansfield, appealed to the Superior Court from the decision of the defendant town's board of assessment appeals, which had upheld the decision of the town assessor to terminate the property's classification as forest land. In 2005, the plaintiffs had submitted to the assessor an application, seeking to have their Mansfield property classified as forest land for municipal property tax purposes under § 12-107b (2) (A), along with a report by a certified forester attesting that their property met the criteria for forest land classification under that provision because it was a single 25 acre tract of land that conformed to the relevant standards. The assessor had approved the application, but, in 2021, the assessor discovered that the property was actually 22.53 acres. The assessor notified the plaintiffs that the property therefore did not qualify as forest land under § 12-107b (2) (A), but the assessor nonetheless indicated that the property continued to qualify as forest land under § 12-107b (2) (B) because the plaintiffs also owned a 14.05 acre parcel in the town of Tolland that also was classified as forest land, and, when the two properties were aggregated, they satisfied the statute's 25 acre requirement. When the plaintiffs subsequently sold the 14.05 acre Tolland parcel, the assessor terminated the classification of the plaintiffs' Mansfield property as forest

land, causing the property's assessed value to increase substantially. The trial court ultimately sustained the plaintiffs' appeal from the board's decision, concluding that, although the Mansfield property had been erroneously designated as forest land because it was not and never had been 25 or more acres, § 12-504 did not permit the assessor to terminate the property's forest land classification because the property had not been sold and its use had not changed. The trial court therefore ordered the town to reinstate the forest land classification of the Mansfield property and to assess property taxes on the property accordingly. On appeal, the town claimed that its assessor had the statutory authority to terminate the property's classification as forest land because that property had never satisfied the minimum acreage requirement of § 12-107b (2). *Held*:

The trial court properly sustained the plaintiffs' appeal from the board's decision upholding the assessor's declassification of the property as forest land and ordered the town to reinstate the forest land classification of the property, this court having concluded that municipal assessors lack the statutory authority to terminate erroneous forest land classifications and that such claims must be directed to the state forester.

The town could not prevail on its claim that its assessor had the authority to terminate the forest land classification of the Mansfield property pursuant to § 12-504h (2) on the ground that "such land [was] sold or transferred by" the plaintiffs when they sold their Tolland parcel.

The term "such land," as used in § 12-504h (2), plainly and unambiguously referred back to the "land" previously specified in the text of that statute, that is, the "land" described in a property owner's application for forest land classification.

The only land described in the plaintiffs' application to the town for forest land classification was the Mansfield property, that property was classified as forest land under § 12-107b (2) (A) as a single 25 acre tract, independent of the 14.05 acre Tolland parcel, and, because the Mansfield property was not sold or transferred and its use had not changed to a use other than that described in the plaintiffs' application to classify the Mansfield property as forest land, the sale of the Tolland parcel had no effect on the forest land classification of the Mansfield property, and the assessor was not authorized under § 12-504h (2) to declassify the Mansfield property as forest land.

The town could not prevail on its claim that its assessor had the authority to terminate the Mansfield property's forest land classification under § 12-107d (f) insofar as that classification was erroneous from its inception on the basis that the Mansfield property never satisfied the minimum twenty-five acre requirement of § 12-107b (2).

This court previously held, under an earlier version of § 12-107d, that municipal assessors lack statutory authority to terminate forest land classifications, even if those classifications are erroneous, on the basis that the earlier version of the statute provided that an assessor "shall" approve an application for the classification of property as forest land if the property has been so

designated by the state forester and that there was no statutory provision that gave an assessor discretionary authority to deny such an application under those circumstances.

Moreover, subsequent legislation (P.A. 04-115, §§ 2 and 3) concerning forestry management did not vest a municipal assessor with the discretionary authority to deny, change, or terminate forest land classifications if the assessor disputes a certified forester's findings that a property satisfies the statutory definition of forest land under § 12-107b (2), even if those findings were erroneous at the time of the initial application.

Rather, P.A. 04-115 created a system of certified foresters, and, pursuant to § 12-107d, as amended by P.A. 04-115, it is a certified forester, rather than the state forester, who evaluates land to determine whether it should be designated as forest land, and, if the municipality or the property owner disagrees with the findings in the certified forester, the municipality or property owner must appeal to the state forester.

Accordingly, the state forester is vested with the exclusive statutory authority to correct errors in the certified forester's findings regarding whether a property satisfies the statutory acreage requirements, and, in the present case, the assessor lacked authority under § 12-107d (f) to terminate the forest land classification of the Mansfield property.

The town could not prevail on its claim that its assessor had the authority to terminate the forest land classification of the Mansfield property pursuant to the statute (§ 12-55 (b)) that requires municipal assessors to "equalize the assessments of the property in the town . . . and [to] make any assessment omitted by mistake or required by law."

The town's claim was foreclosed by this court's decision in *Griswold Airport, Inc.* v. *Madison* (289 Conn. 723), in which this court held that § 12-55 (b) does not vest municipal assessors with statutory authority to terminate land classifications for property tax purposes.

Specifically, although § 12-55 assigns municipal assessors a watchtower role to correct inequalities, it does not authorize assessors to revoke a land classification preliminarily to exercising that role, and, because the specific statutes governing the classification and declassification of forest land, namely, §§ 12-107d and 12-504h, do not permit assessors to correct forest land classifications on the ground that the certified forester had erroneously calculated the number of conforming forest land acres, § 12-55 (b) was inapplicable.

Argued April 16—officially released July 21, 2026

*Procedural History*

Appeal from the decision of the defendant's board of assessment appeals changing the classification of certain of the plaintiffs' real property, brought to the Superior

Court in the judicial district of Tolland and transferred to the judicial district of New Britain, Tax Session, where the court, *Cordani, J.*, denied the parties' motions for summary judgment; thereafter, the case was tried to the court, *Budzik, J.*; judgment sustaining the plaintiffs' appeal, from which the defendant appealed. *Affirmed.*

*Lloyd L. Langhammer*, for the appellant (defendant).

*Mario Campelli*, self-represented, and *Christine Campelli*, self-represented, the appellees (plaintiffs).

*William Tong*, attorney general, *Matthew I. Levine*, deputy associate attorney general, and *Michael P. Holler*, special assistant attorney general, filed a brief for the Department of Energy and Environmental Protection as amicus curiae.

*Opinion*

**ECKER, J.** The issue in this tax appeal is whether a municipal assessor has the authority under General Statutes § 12-107d, General Statutes § 12-504h, or General Statutes § 12-55 to terminate the classification of property as "forest land" on the ground that the property does not now, and never did, meet the minimum acreage required to qualify as forest land under General Statutes § 12-107b (2) (A). Consistent with this court's holding in *Carmel Hollow Associates Ltd. Partnership* v. *Bethlehem*, 269 Conn. 120, 848 A.2d 451 (2004) (*Carmel Hollow*), we conclude that municipal assessors lack the statutory authority to terminate erroneous forest land classifications and that such claims "must be directed to the state forester . . . ." (Footnote omitted.) Id., 145. We therefore affirm the judgment of the trial court, which determined that the municipal assessor for the defendant, the town of Mansfield, had improperly terminated the forest land classification of the property owned by the plaintiffs, Mario Campelli and Christine Campelli.

I

BACKGROUND

In June 2005, the plaintiffs purchased property located on Hickory Lane in the town of Mansfield (Hickory Lane

property**).** Two months later, the plaintiffs submitted an application to the defendant's assessor, seeking to classify the property as forest land for municipal tax purposes under § 12-107b (2) (A), which defines "forest land," in relevant part, as "one tract of land of twenty-five or more contiguous acres" that "bear[s] tree growth that conforms to the forest stocking, distribution and condition standards established by the State Forester pursuant to subsection (a) of section 12-107d . . . ." Consistent with the requirements of § 12-107d (g), the plaintiffs submitted the signed and sworn report of a certified forester describing the Hickory Lane property and attesting that it meets the statutory criteria for forest land classification because it is a single twenty-five acre tract of land that "conforms to the standards of forest stocking, distribution and condition established by the State Forester." General Statutes § 12-107d (g). In September 2005, the defendant's assessor granted the plaintiffs' application to classify the Hickory Lane property as forest land.[1]

In 2021, the defendant's assessor conducted a review of the town's property records and discovered "that the acreage, heretofore, listed on the property record card for the [Hickory Lane property], at *25 acres, is incorrect*." (Emphasis in original.) A 1992 survey map filed in the town's land records listed the acreage of the property as 22.53 acres. Because the acreage of the property was less than 25 acres, the defendant's assessor determined that it did not qualify as forest land under subdivision (2) (A) of § 12-107b.

The defendant's assessor nonetheless concluded that the Hickory Lane property qualified as forest land under a different statutory subdivision, § 12-107b (2) (B), which defines forest land to also include "two or more tracts of land aggregating twenty-five acres or more in which no single component tract shall consist of less than ten acres . . . ." This definition applied to the Hickory Lane property at the time because, according to the land records, the

---

[1] Prior to its purchase by the plaintiffs in 2005, the Hickory Lane property had been classified as a single twenty-five acre tract of forest land since 1994.

plaintiffs also owned "land classified as [f]orest [l]and in the [t]own of Tolland," which "include[d] a 14.05 acre parcel, a 1.26 acre parcel and a 6.54 acre parcel . . . ." Neither the 1.26 acre parcel nor the 6.54 acre parcel met the 10 acre minimum requirement for aggregation, but, by aggregating the 14.05 acre parcel with the Hickory Lane property, the assessor determined that the plaintiffs had satisfied the statutory minimum of 25 acres of forest land.

There was one complication—the plaintiffs were in the process of selling the 14.05 acre Tolland parcel. The defendant's assessor advised the plaintiffs that, "according to . . . § 12-504h, the [forest land] classification [of the Hickory Lane property] 'shall cease as of the date of sale or transfer'" of the 14.05 acre Tolland parcel, and, as a result, the assessor notified the plaintiffs that the assessed value of the Hickory Lane property would increase from $3800 on the 2020 grand list to $38,640 on the 2021 grand list. (Emphasis omitted.) In December 2021, the plaintiffs sold the 14.05 acre Tolland parcel, and the assessor terminated the forest land classification of the Hickory Lane property.

Following an unsuccessful appeal to the defendant's board of assessment appeals, the plaintiffs filed a tax appeal in the Superior Court. See General Statutes §§ 12-107d (j) and 12-117a (a) (1). After denying both parties' motions for summary judgment, the trial court conducted a trial de novo, at which the plaintiff Mario Campelli and the defendant's assessor, Rochelle Lambert, testified. On the basis of the evidence adduced at trial, the trial court found that "the Hickory Lane property is not now and never has been twenty-five acres in size . . . [and] ought never have been designated as forest land in the first instance." The trial court, however, also determined that the assessor was legally precluded from terminating the existing forest land classification on the ground that the property did not meet the minimum acreage requirement. This conclusion was based on the language of § 12-504h, which provides in relevant part that land classified as forest land "shall remain so classified

without the filing of any new application subsequent to such classification . . . until either of the following shall occur: **(1)** The use of such land is changed to a use other than that described in the application for the existing classification by said record owner, or **(2)** such land is sold or transferred by said record owner. . . .''

The trial court concluded that ''§ 12-504h's express terms are clear. A forest land classification shall remain on the land unless that land is sold or its use changes. Section 12-504h includes no additional provision that a forest land classification must have been correct in the first instance, or that the classification may be revoked because it was originally obtained by mistake.'' Because the Hickory Lane property has been classified as forest land since 2005 and neither the use nor the ownership of the property has changed since that time, the trial court held that ''it was improper for the [defendant] to terminate the Hickory Lane property's forest land classification for the 2021 grand list year and for each subsequent year . . . .'' The trial court therefore ordered the defendant to ''reinstate the forest land classification [of] the Hickory Lane property and [to] assess real property taxes on the same commensurate with that designation.'' The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court. See General Statutes § 51-199 (c); Practice Book § 65-1.

On appeal, the defendant contends that the judgment of the trial court should be reversed because the sale of the 14.05 acre Tolland parcel resulted in the plaintiffs owning less than the minimum twenty-five acres of qualified forest land required by § 12-107b (2) (B), thus necessitating the termination of the forest land classification of the Hickory Lane property pursuant to §§ 12-107d and 12-504h. The defendant further contends that the assessor's declassification of the Hickory Lane property is consistent with § 12-55, which requires assessors to ''equalize the assessments of property in the town, if necessary, and [to] make any assessment *omitted by mistake*

*or required by law*."[2] (Emphasis added.) General Statutes § 12-55 (b). The plaintiffs respond that the defendant's assessor lacked the statutory authority to terminate the forest land classification of the Hickory Lane property pursuant to *Timber Trails Associates* v. *New Fairfield*, 226 Conn. 407, 627 A.2d 932 (1993), and *Carmel Hollow Associates Ltd. Partnership* v. *Bethlehem*, supra, 269 Conn. 120.

## II
## STATUTES AND REGULATIONS GOVERNING FOREST LAND CLASSIFICATIONS

It is important at the outset to understand the statutory and regulatory framework governing forest land classifications. To encourage land preservation and natural resource conservation, General Statutes §§ 12-107a through 12-107g grant preferential tax treatment to property classified as farm land, forest land, open space land, and maritime heritage land. See, e.g., *Rustici* v. *Stonington*, 174 Conn. 10, 13, 381 A.2d 532 (1977). Section 12-107a "declare[s] (1) that it is in the public interest to encourage the preservation of farm land, forest land, open space land and maritime heritage land in order to maintain a readily available source of food and farm products close to the metropolitan areas of the state, to conserve the state's natural resources and to provide for the welfare and happiness of the inhabitants of the state, (2) that it is in the public interest to prevent the forced conversion of farm land, forest land, open space land and maritime heritage land to more intensive uses as the result of economic pressures caused by the

---

[2] The defendant also claims, for the first time in its reply brief, that the plaintiffs' appeal to the trial court was improperly filed pursuant to § 12-117a instead of General Statutes § 12-119. "It is a well established principle that arguments cannot be raised for the first time in a reply brief. . . . Arguments must be raised in an appellant's original brief . . . so that the issue as framed . . . can be fully responded to by the appellee in its brief, and so that [an appellate court] can have the full benefit of that written argument." (Internal quotation marks omitted.) *Benjamin* v. *Corasaniti*, 341 Conn. 463, 476–77 n.8, 267 A.3d 108 (2021). We decline to address the defendant's belated claim.

assessment thereof for purposes of property taxation at values incompatible with their preservation as such farm land, forest land, open space land and maritime heritage land, and **(3)** that the necessity in the public interest of the enactment of the provisions of sections 12-107b to 12-107e, inclusive, 12-107g and 12-504f is a matter of legislative determination." Consistent with these provisions, farm land, forest land, open space land, and maritime heritage land are taxed on the basis of their "current use without regard to neighborhood land use of a more intensive nature," rather than at their fair market value. General Statutes § 12-63 **(a).**

Forest land is defined as "any tract or tracts of land aggregating twenty-five acres or more in area bearing tree growth that conforms to the forest stocking, distribution and condition standards established by the State Forester pursuant to subsection **(a)** of section 12-107d, and consisting of **(A)** one tract of land of twenty-five or more contiguous acres, which acres may be in contiguous municipalities, **(B)** two or more tracts of land aggregating twenty-five acres or more in which no single component tract shall consist of less than ten acres, or **(C)** any tract of land which is contiguous to a tract owned by the same owner and has been classified as forest land pursuant to this section . . . ." General Statutes § 12-107b **(2).**

To classify property as forest land, a property owner "shall employ a certified forester to examine the land to determine if it conforms to forest stocking, distribution and condition standards established by the State Forester . . . ." General Statutes § 12-107d **(c).** The certified forester must issue a report that includes "a description of the land, a description of the forest growth upon the land, a description of forest management activities recommended to be undertaken to maintain the land in a state of proper forest condition and such other information as the State Forester may require . . . ." General Statutes § 12-107d **(g).** According to regulations promulgated by the Department of Energy and Environmental Protection **(department),** the certified forester's report also must

include "the total acreage for each . . . component lot" proposed for forest land classification and "the total number of acres that the qualified forester determines conform[s] to the standards for forest land classification . . . ." Regs., Conn. State Agencies § 12-107d-4 (a) (3) and (4).[3]

After obtaining a report from a certified forester, the property owner "may apply for its classification as forest land on any grand list of a municipality by filing a written application for such classification accompanied by a copy of the certified forester's report . . . with the assessor thereof not earlier than thirty days before or later than thirty days after the assessment date and, if the assessor determines that the use of such land as forest land has not changed as of a date at or prior to the assessment date such assessor shall classify such land as forest land and include it as such on the grand list . . . ." General Statutes § 12-107d (f).

The municipality within which the proposed forest land is located or the owner of the proposed forest land "may appeal to the State Forester for a review of the findings of the certified forester as issued in the certified forester's report." General Statutes § 12-107d (i). In particular, the municipality "may appeal . . . (i) the total number of acres . . . determined to satisfy the standards for forest land classification . . . or (ii) the qualified forester's delineation of the land determined to satisfy the standards for forest land classification . . . or any changes in land previously classified as forest land." Regs., Conn. State Agencies § 12-107d-4 (f) (2). The appeal "shall be filed with the State Forester not later than thirty business days after the issuance of the report and shall be brought by petition in writing. The State Forester shall review the report of the certified forester and any information the certified forester relied upon in developing his or her findings and may gather additional information at his or her discretion. The State Forester shall render

---

[3]The department oversees the state forester and promulgates regulations governing forest land classifications. See General Statutes §§ 12-107a through 12-107g; General Statutes §§ 23-65f through 23-65q; see also Regs., Conn. State Agencies § 12-107d-1 through 12-107d-5.

the results of his or her review of the certified forester's report not later than sixty calendar days after the appeal was filed." General Statutes § 12-107d (i).

The statutory scheme does not provide either the municipality or the property owner with a right of appeal from the ultimate decision of the state forester, although a property owner "aggrieved by the denial of any application to the assessor of a municipality for classification of land as forest land [has] the same rights and remedies for appeal and relief as are provided in the general statutes for taxpayers claiming to be aggrieved by the doings of assessors or boards of assessment appeals." General Statutes § 12-107d (j). These remedies include a tax appeal to the Superior Court. See General Statutes § 12-117a (a) (1) ("[a]ny person . . . claiming to be aggrieved by the action of the board of tax review or the board of assessment appeals, as the case may be, in any town or city may make application, not later than two months after the date of the mailing of notice of such action, in the nature of an appeal therefrom to the superior court for the judicial district in which such town or city is situated").

Once granted, forest land classifications "shall be deemed personal to the particular owner who requests and receives such classification and shall not run with the land. Any such land which has been classified by a record owner shall remain so classified without the filing of any new application subsequent to such classification . . . until either of the following shall occur: (1) The use of such land is changed to a use other than that described in the application for the existing classification by said record owner, or (2) such land is sold or transferred by said record owner." General Statutes § 12-504h. If land classified as forest land is sold or transferred, the classification "shall cease as of the date of sale or transfer." General Statutes § 12-504h. If the use of land classified as forest land changes, the classification "shall cease"; General Statutes § 12-504h; as of "the date on which the use of such property is changed, or the date on which the assessor becomes aware of a change in use of such

property, whichever occurs first." General Statutes § 12-504e (2). "Upon termination of classification as forest land, the assessor of the municipality in which the land is located shall issue a notice of cancellation and provide a copy of such notice to the owner of the land and to the office of the assessor of any other municipality in which the owner's land is classified as forest land." General Statutes § 12-107d (e).

### III
### DISCUSSION

Whether the defendant's assessor had the statutory authority to terminate the forest land classification of the Hickory Lane property is an issue of statutory construction subject to plenary review. See, e.g., *Carmel Hollow Associates Ltd. Partnership* v. *Bethlehem*, supra, 269 Conn. 129. To ascertain the meaning of the statutes at issue, we apply the principles set forth in General Statutes § 1-2z. Our analysis also is informed by the tools of statutory construction applicable to tax appeals. As we previously have explained, "[w]hen a taxing statute is being considered, ambiguities are resolved in favor of the taxpayer." (Internal quotation marks omitted.) *Torrington Water Co.* v. *Board of Tax Review*, 168 Conn. 319, 324, 362 A.2d 866 (1975). The statutes governing forest land classifications are taxing statutes, and any ambiguity found therein must be resolved in favor of the taxpayer. See id.; see also *Rolling Hills Country Club, Inc.* v. *Board of Tax Review*, 168 Conn. 466, 473, 363 A.2d 61 (1975).

### A
### General Statutes § 12-504h

We first address whether the defendant's assessor had the authority to terminate the forest land classification of the Hickory Lane property under § 12-504h on the ground that, in light of the sale of the 14.05 acre Tolland parcel, "such land [was] sold or transferred by said record owner." General Statutes § 12-504h (2). The issue is easily resolved on this record because the defendant does not

dispute that the Hickory Lane property was classified as forest land under § 12-107b (2) (A) as a single twenty-five acre tract that conformed to the relevant standards, independent of the 14.05 acre Tolland parcel. It necessarily follows that the sale of the Tolland parcel had no effect on the forest land classification of the Hickory Lane property.

Section 12-504h[4] provides in relevant part that land classified as "forest land pursuant to section 12-107d . . . shall remain so classified without the filing of any new application subsequent to such classification . . . until either of the following shall occur: (1) The use of such land is changed to a use other than that described in the application for the existing classification by said record owner, or (2) *such land* is sold or transferred by said record owner. . . ." (Emphasis added.) The term "such land" is not defined in § 12-504h, and, therefore, we must consult its commonly approved usage. See General Statutes § 1-1 (a). "The word such has been construed as an adjective referring back to and identifying something previously spoken of; the word naturally, by grammatical usage, refers to the last antecedent. . . . The accepted dictionary definitions of such include having a quality already or just specified, previously characterized or specified, and aforementioned." (Internal quotation marks omitted.) *Lackman* v. *McAnulty*, 324 Conn. 277,

---

[4]Section 12-504h "is contained in chapter 223 of the General Statutes, entitled 'Real Estate Conveyance Tax' "; *Carmel Hollow Associates Ltd. Partnership* v. *Bethlehem*, supra, 269 Conn. 140; which "pertain[s] to the imposition of an additional real estate conveyance tax on property classified as farm land, forest land . . . open space land [or maritime heritage land] that has been sold or changes in use within a period of ten years from the acquisition of title to such property." Id., 140 n.24. In *Carmel Hollow*, we noted that, "although § 12-504h is part of the real estate conveyance tax scheme, there is nothing in its language to suggest that it does not apply to the termination of a classification for the purpose of property tax assessments . . . ." Id., 140–41. "Moreover, it would make no sense to construe § 12-504h as requiring the termination of a classification for the purpose of imposing a real estate conveyance tax, but not for the purpose of revaluing property on the grand list of a municipality." Id., 141. Accordingly, § 12-504h applies to the termination of forest land classifications for municipal property tax purposes.

287, 151 A.3d 1271 (2016); see also *L. H.-S.* v. *N. B.*, 341 Conn. 483, 493, 267 A.3d 178 (2021) ("the phrase 'such person' . . . [typically] modifies or refers to the phrase immediately preceding it in the statute"); *LaProvidenza* v. *State Employees' Retirement Commission*, 178 Conn. 23, 27–28, 420 A.2d 905 (1979) ("the phrase 'such allowance' " meant prior statutory reference to "a retirement allowance based [on] a 'permanent and total disability' "). The term "such land" in § 12-504h (2) plainly and unambiguously refers back to the land previously specified in the statute, i.e., the land described in the property owner's application for forest land classification.

In the present case, the defendant acknowledges that the only land described in the plaintiffs' application for classification of the Hickory Lane property as forest land was the Hickory Lane property itself.[5] Thus, it is undisputed that the plaintiffs sought and obtained the forest land classification of the Hickory Lane property under § 12-107b (2) (A) as "*one tract of land* of twenty-five or more contiguous acres," independent of the 14.05 acre

[5]The application form for forest land classification submitted to the defendant's assessor asks whether the property owner has "land classified as forest land in any other Connecticut town" and, if so, provides a space for the "name of [the] other town(s) . . . ." The plaintiffs responded "[y]es" and listed the name of the town as "Tolland." It is unclear from the record whether the Tolland parcel referenced in the plaintiffs' application is the same 14.05 acre Tolland parcel that the plaintiffs sold in December 2021. The defendant's appellate counsel informed this court during oral argument, however, that the 14.05 acre Tolland parcel was purchased *after* the plaintiffs sought and obtained the forest land classification of the Hickory lane property in 2005. Likewise, the plaintiffs represented in their posttrial brief in the trial court that the 14.05 acre Tolland parcel "had no bearing whatsoever [on their] acquiring and securing the forest land classification" of the Hickory Lane property and that it was the Hickory Lane property that subsequently was used "to acquire the forest land classification for the Tolland parcel." Thus, it is undisputed that approval of the plaintiffs' application by the defendant's assessor was not dependent on the Tolland parcel, and the record supports the parties' position: the application lists the "[t]otal acreage" of the Hickory Lane property as "25.0" acres, the "[p]ortion qualified as forest land by [the] [c]ertified [f]orester" as "25.0" acres, and the "[a]creage [c]lassified" as forest land by the defendant's assessor as "25."

Tolland parcel. **(**Emphasis added.**)** Because the classification of the Hickory Lane property as forest land was not dependent on the 14.05 acre Tolland parcel, and the Hickory Lane property was not sold or transferred, and its use has not changed to a use other than that described in the plaintiffs' application for forest land classification, the sale of the 14.05 acre Tolland parcel did not authorize the declassification of the Hickory Lane property under § 12-504h.

B
General Statutes § 12-107d

We next address whether the defendant's assessor had the authority to terminate the Hickory Lane property's forest land classification under § 12-107d (f), which provides in relevant part that "[a]n owner of land may apply for its classification as forest land on any grand list of a municipality by filing a written application for such classification accompanied by a copy of the certified forester's report described in subsection (g) of this section with the assessor thereof . . . and, if the assessor determines that the use of such land as forest land has not changed as of a date at or prior to the assessment date such assessor *shall classify such land as forest land* and include it as such on the grand list . . . ." Although the defendant's argument is not entirely clear, the defendant appears to contend that § 12-107d (f) granted its assessor the authority to terminate the Hickory Lane property's forest land classification on the ground that the classification was erroneous from inception because the Hickory Lane property was less than twenty-five acres. In ascertaining whether § 12-107d (f) granted the defendant's assessor such authority, "we do not write on a clean slate, but are bound by our previous judicial interpretations of this language and the purpose of the statute." (Internal quotation marks omitted.) *Commissioner of Public Safety* v. *Freedom of Information Commission*, 312 Conn. 513, 527, 93 A.3d 1142 (2014).

In *Carmel Hollow*, we addressed the authority of municipal assessors to terminate forest land classifications

under a prior version of §12-107d. See *Carmel Hollow Associates Ltd. Partnership* v. *Bethlehem*, supra, 269 Conn. 122–23 and n.2; see also General Statutes (Rev. to 2003) §12-107d. In light of the text and declared purpose of the statutory scheme "to encourage the preservation of property designated as . . . forest land . . . by ensuring against the conversion of such land to more intensive uses as the result of higher property tax assessments"; (internal quotation marks omitted) *Carmel Hollow Associates Ltd. Partnership* v. *Bethlehem*, supra, 131; this court concluded that municipal assessors lack the statutory authority to declassify property previously designated as forest land.[6] See id., 130, 134–35. Of critical importance to our analysis was subsection (c) of General Statutes (Rev. to 2003) §12-107d, now codified at subsection (f), providing that a municipal assessor " '*shall classify such land as forest land*' " if it has been designated as forest land by the state forester. (Emphasis in original.) Id., 132, quoting General Statutes (Rev. to 2003) §12-107d (c). We reasoned that, because the statute "provides that an assessor '*shall*' approve an application for the classification of property as forest land if the property has been so designated, and because there is no other provision that gives an assessor discretionary authority to deny such an application, the only reasonable construction of the statutory scheme is that an assessor who believes that the use of the land has changed must

---

[6]In *Carmel Hollow*, we noted that "[t]he terms 'designation' and 'classification,' as used in the [former] statutory scheme, refer to specific actions of the state forester and town assessors, respectively. The 'designation' of property as forest land requires the property owner to file a written application seeking the designation and a determination by the state forester that the property is so qualified. The 'classification' of designated property as forest land on the grand list of a municipality requires the property owner to file an application with the town assessor to obtain the preferential tax treatment afforded to such classified property." *Carmel Hollow Associates Ltd. Partnership* v. *Bethlehem*, supra, 269 Conn. 131–32 n.17. The distinction between the "designation" and "classification" of property as forest land was eliminated by No. 04-115, §3, of the 2004 Public Acts, and the current version of §12-107d now refers only to forest land classifications. See generally General Statutes §12-107d.

request a reexamination of the forest land designation" by the state forester. **(**Emphasis in original.**)** Id., **134.** This court further reasoned that "it would defy common sense to grant discretionary authority to assessors to deny such applications because assessors may be motivated by local financial considerations that are at odds with the underlying purpose of the statutory scheme to conserve the state's natural resources." Id., **134–35.** The court therefore held that municipal assessors lack the statutory authority to terminate forest land classifications. See id., **137.**

In arriving at this conclusion, the court in *Carmel Hollow* specifically rejected the claim that municipal assessors may terminate forest land classifications if "the state forester had no legal authority to designate the . . . property as forest land" in the first place because "the property did not meet the statutory criteria for designation as forest land" and because the property owner "provided inaccurate and misleading information in its application to designate the property as forest land." Id., **145.** We stated that the state forester's authority to designate property as forest land "ha[d] no bearing on the issue of whether the assessor had the requisite authority" to terminate a forest land designation. Id. "Moreover, claims regarding the erroneous designation of property as forest land must be directed to the state forester, or to the Superior Court, pursuant to the express provisions of [General Statutes **(**Rev. to 2003**)**] §12-107d **(**f**)**, which authorize the landowner or municipality to appeal to the Superior Court from the state forester's approval or disapproval of an application to designate property as forest land within thirty days of such decision." **(**Emphasis omitted; footnote omitted.**)** Id., **145–46.** In other words, municipal assessors lack the statutory authority to terminate forest land classifications, even if the forester's designations were, and always have been, erroneous.

One month before the release of this court's decision in *Carmel Hollow*, the legislature enacted No. 04-115

of the 2004 Public Acts (P.A. 04-115), entitled "An Act Concerning Forestry Management," which made substantial changes to §12-107d. See P.A. 04-115, §3. Although the defendant in the present case does not address the significance of these statutory amendments (or our decision in *Carmel Hollow*), the department submitted an amicus brief in support of the defendant, in which it argues that *Carmel Hollow* no longer is good law in light of P.A. 04-115. The department argues that, under the current version of §12-107d, the defendant's assessor possessed the statutory authority to terminate the forest land classification of the Hickory Lane property. We disagree.

The most significant change implemented by the 2004 amendment was the creation of a system of certified foresters, who are private practitioners certified by the Commissioner of Energy and Environmental Protection as foresters pursuant to the requirements set forth in General Statutes §23-65h. See P.A. 04-115, §2; see also General Statutes §12-107b (7). Consistent with this change, the legislature amended §12-107d to provide that a certified forester, rather than the state forester, "may evaluate land proposed for classification as forest land and attest to the qualifications of such land for classification as forest land, provided such certified forester has satisfactorily completed training by and obtained a certificate from the State Forester or his or her designee related to policies and standards for evaluating land proposed for classification as forest land and, in the opinion of the State Forester, the certified forester acts in conformance with such policies and standards." P.A. 04-115, §3, codified at General Statutes §12-107d (b). Under §12-107d, as amended, it is now a certified forester who evaluates land and determines whether it meets the statutory and regulatory requirements to qualify as forest land under General Statutes §§12-107b (2) and 12-107d, and §§12-107d-1 through 12-107d-4 of the regulations.

Two other statutory changes warrant mention. First, P.A. 04-115 amended §12-107d to provide municipal assessors with the discretion to deny an application for

forest land classification if "the assessor determines that the *use of such land as forest land has . . . changed* as of a date at or prior to the assessment date . . . ." (Emphasis added.) P.A. 04-115, §3, codified at General Statutes §12-107d (f). In all other circumstances, however, the municipal assessor "*shall classify such land as forest land* and include it as such on the grand list . . . ." (Emphasis added.) P.A. 04-115, §3, codified at General Statutes §12-107d (f). Second, P.A. 04-115, §3, deleted the statutory provision that provided the municipality and the property owner with a right to appeal to the Superior Court. Instead, §12-107d (i), as amended by P.A. 04-115, §3, now provides that, if the municipality or the property owner disagrees with "the findings of the certified forester as issued in the certified forester's report," the party must appeal in writing to the state forester "not later than thirty business days after the issuance of the report . . . ." The state forester "shall render the results of his or her review of the certified forester's report not later than sixty calendar days after the appeal was filed." General Statutes §12-107d (i). Neither the municipality nor the property owner has a right to appeal from the decision of the state forester, as they did under the prior version of the statute, but P.A. 04-115 left intact the portion of §12-107d providing "[a]n owner of land aggrieved by the denial of any application to the assessor of a municipality for classification of land as forest land [with] . . . the same rights and remedies for appeal and relief as are provided in the general statutes for taxpayers claiming to be aggrieved by the doings of assessors or boards of assessment appeals." P.A. 04-115, §3, codified at General Statutes §12-107d (j); see also General Statutes §12-117a (a) (1).

On the basis of these statutory changes, we conclude that, unlike the former version of §12-107d analyzed in *Carmel Hollow*, the current version of the statute plainly allows a municipal assessor to deny an application for the classification of property as forest land "if the assessor determines that the use of the land has changed prior to the assessment date." *Imperial Development, LLC* v. *Coventry*, Superior Court, judicial district of New

Britain, Docket No. HHB-CV-15-6029662-S (April 1, 2016) (62 Conn. L. Rptr. 30, 31–32); see General Statutes § 12-107d (f). It does not, however, vest municipal assessors with the discretionary authority to deny, change, or terminate forest land classifications if they disagree with the certified forester's findings as to whether a property's total number of acres satisfies the statutory definition of forest land under § 12-107b (2), even if those findings were erroneous at the time of the initial application. Under the plain language of the statutory scheme, municipal assessors who dispute the certified forester's findings as to forest land acreage "*shall* classify such land as forest land and include it as such on the grand list"; General Statutes § 12-107d (f); unless they successfully "appeal to the State Forester for a review of the findings of the certified forester as issued in the certified forester's report." General Statutes § 12-107d (i). No such appeal was filed by the defendant's assessor in the present case.

Because the state forester is vested with the exclusive statutory authority to correct errors in the certified forester's findings regarding "the total number of acres . . . determined to satisfy the standards for forest land classification"; Regs., Conn. State Agencies § 12-107d-4 (f) (2) (i); we conclude that the defendant's assessor lacked the authority under § 12-107d (f) to terminate the forest land classification of the Hickory Lane property.

## C
### General Statutes § 12-55

Lastly, the defendant claims that its assessor had the statutory authority to terminate the forest land classification of the Hickory Lane property under § 12-55 (b), which requires municipal assessors to "equalize the assessments of property in the town, if necessary, and [to] make any assessment omitted by mistake or required by law." The defendant's claim is foreclosed by *Griswold Airport, Inc.* v. *Madison*, 289 Conn. 723, 729 n.10, 961 A.2d 338 (2008), in which this court held that § 12-55 (b)

does not grant municipal assessors the statutory authority to terminate property tax classifications.

In *Griswold Airport, Inc.*, the town of Madison claimed that §12-55 (b) granted its assessor the authority to declassify land classified as open space land pursuant to General Statutes (Rev. to 2003) §12-107e, even though the assessor lacked the authority to terminate the open space land classification under General Statutes (Rev. to 2003) §12-504h. See id., 725–26, 729 and n.10. We rejected the town's claim on the ground that, although "§12-55 imports a watchtower role for the assessor to correct inequalities, whether too high or too low," it does not "[authorize] an assessor to remove an open space classification preliminar[ily] to exercising this role . . . . Rather, the authority to declassify open space clearly is conferred by §12-504h only. It is a [well settled] principle of [statutory] construction that specific terms covering [a] given subject matter will prevail over general language of . . . another statute which might otherwise prove controlling." (Citation omitted; internal quotation marks omitted.) Id., 729 n.10.

In accordance with *Griswold Airport, Inc.*,[7] we conclude that the defendant's assessor lacked the statutory authority to terminate the forest land classification of the Hickory Lane property under §12-55 (b). Similar to open space land classifications, forest land classifications

[7]During oral argument before this court, the defendant's appellate counsel claimed that *Griswold Airport, Inc.*, was distinguishable because it addressed a municipal assessor's authority to "equalize the assessments of property in the town" under §12-55 (b), rather than a municipal assessor's authority to "make any assessment omitted by mistake . . . ." General Statutes §12-55 (b). This distinction misses the point. Regardless of whether a municipal assessor seeks to equalize assessments, to correct an assessment omitted by mistake, or to impose an assessment required by law, §12-55 (b) is a statute of general applicability that yields to the specific terms governing the termination of a forest land classification in §12-107d or §12-504h. Because §12-55 (b) does not authorize a municipal assessor to terminate a forest land classification prior to exercising its watchtower role, the defendant's reliance on §12-55 (b) is misplaced. See *Griswold Airport, Inc.* v. *Madison*, supra, 289 Conn. 729 n.10.

specifically are governed by §§ 12-107d and 12-504h, neither of which authorized the defendant's assessor to terminate the forest land classification of the Hickory Lane property on the ground that the certified forester erroneously calculated the number of conforming forest land acres. See part III A and B of this opinion. Because the specific statutes governing the classification and declassification of forest land do not permit municipal assessors to correct forest land classifications on this basis, we conclude that § 12-55 (b) is inapplicable.

## IV
## CONCLUSION

We conclude that the defendant's assessor lacked the statutory authority to terminate the forest land classification of the Hickory Lane property. We arrive at this conclusion without expressing an opinion concerning whether public policy supports granting municipal assessors the statutory authority to terminate erroneous forest land classifications. To the extent that it is incongruous to grant municipal assessors the statutory authority to terminate forest land classifications if there has been a change in the use of the classified property or upon its sale or transfer; see General Statutes § 12-504h; but not if the forest land classification erroneously was granted in the first place on the basis of an accident, mistake, or omission, that is an issue that must be addressed by the legislature. "It is not the province of this court, under the guise of statutory interpretation, to legislate . . . a [particular] policy, even if we were to agree . . . that it is a better policy than the one endorsed by the legislature as reflected in its statutory language." (Internal quotation marks omitted.) *Trinity Christian School* v. *Commission on Human Rights & Opportunities*, 329 Conn. 684, 697–98, 189 A.3d 79 (2018); see also *Mozzochi* v. *Glastonbury*, 188 Conn. 276, 279, 449 A.2d 173 (1982) ("[i]t is not the function of courts to read into clearly expressed legislation provisions [that] do not find expression in its words" (internal quotation marks omitted)). "It is the legislature's prerogative to address

and remedy any perceived inconsistency" in the statutory scheme. *PPC Realty, LLC* v. *Hartford*, 350 Conn. 347, 361, 324 A.3d 780 (2024).

For the foregoing reasons, the trial court properly sustained the plaintiff's appeal from the decision of the board of assessment appeals and ordered the defendant's assessor to reinstate the forest land classification of the Hickory Lane property.

The judgment is affirmed.

In this opinion the other justices concurred.